No. 242122. Council, you may proceed. J.K. Theodosia Johnson on behalf of Mr. Guzman. I shall endeavor to save two minutes. Mr. Guzman had the permission of the property owner, Mr. Cannon, to stay on the property in his pop-up camp-up trailer. That's textbook standing. The trailer itself was not rendered substandard. And the government's argument that merely posting a substandard notice on a building gives it control over the entire property, including areas that aren't deemed unsafe. Well, let me ask you about that. The evidence was that Mr. Guzman had read the notice, correct?  And the posted notice said no person shall reside in this structure. So, so far that seems to refer to the building.  But then it said, or on this property. Now, why doesn't that put him on notice that he's not supposed to reside on this property? Because the rights of the owner, Mr. Cannon, trumped that, right? And he had Mr. Cannon's permission. And so. All right. So, so your argument is that the permission trumps the notice. But would you agree that the notice tells him he's not supposed to live there? He's not supposed to live there, but he does. In the trailer? No, he's not supposed to live in the buildings. No, I meant on the property. And the trailer's on the property. But the trailer itself is not substandard. And I think that. Yeah, but the notice doesn't, the notice says, doesn't say reside in this structure or property. That's what it says in the in the code, by the way. But the notice says something a little different. It says structure or on this property. So how does he have a reasonable expectation of privacy if he's residing on the property? Because he's still not a trespasser. Does he need to be a trespasser to not to have a reasonable, I mean, if he's not a trespasser, does that automatically mean he has a reasonable expectation of privacy? I think this is going to answer your question. This is essentially the hypothetical posed in the dissent in Rockman, where. Is that the cave case? Yes, it's the cave case where Mr. or Judge McKay said, you know, you own your RV and all of a sudden you overstay your camper permit. That doesn't do away with your expectation of privacy because it's still your home. And that there, the the question of trespassing was really a red herring because it tied it solely to the property. Right. And not to the expectation of privacy that attaches to your home. And that's what it is here. He has an expectation of privacy in his camper trailer home. And I go back. I don't think that the ordinances prevent Mr. Cannon from giving permission for people to put things on his property or to access his property. And yes, there was a finding below that he wasn't there to fix the property because he was sleeping. Let me ask you this. The housing code says in another provision. And these these have lots of numbers and letters on them, so I'm not even going to try it. But believe me, it says this. No person shall be on the property without the written permission of the department. Does that apply to Mr. Cannon? So I think it's a bureaucratic requirement that doesn't transform it into trespass. Well, I'm just asking, does Mr. Cannon need to get permission to go on his own property? Um, that provision. So I think that I don't. Mr. Cannon live in the trailer. Mr. Cannon could live in the trailer. I think that on that point, it's when under that provision, it's when they haven't taken any steps to abate the nuisance that they say, then you have to get permission because I think they're trying to ensure compliance. The whole point of declaring a building substandard is to get someone to fix it. And if you can't access the property, you can't fix it. So Mr. Cannon has the ability to tell Mr. Guzman that he can go on the property to fix it. And he did testify that it was here there to fix the plumbing. Can I? You said that there was a finding that because he was sleeping there, that he wasn't there with permission to fix the plumbing. But it was in the middle of the day that they came. Correct. And the ordinances would give him permission with owner permission to be on the property to fix the plumbing. And they wouldn't have known he was sleeping until they walked in. Right. Correct. So were you conceding that it didn't matter that it happened during the day? No, no, not at all. I was just acknowledging that the district court made a finding that he was not there to fix the property because he was sleeping. But well, are you are you challenging that finding is clearly erroneous? Yes, I don't think that sleeping or taking a nap precludes I think there's there's in the ordinances about supplemental things that you do in the course of fixing. And like you can take a break and he could be resting his eyes and fell asleep during his break. So I don't think the fact that he was at that one point sleeping precludes the fact that he was there to fix the plumbing or secure the property by his presence. I meant to ask you this at the beginning, so I'm sorry I'm backing up. But on the issue of reasonable expectation of privacy, the district court said he didn't have a reasonable expectation of privacy. What is our standard of review? Do we review that de novo or is that reviewed for clear error? That's reviewed de novo because it's the legal conclusion that he didn't have an expectation of privacy. Is there a good case on that to support what you just said? I'm sure there is. I can't think of it off the top of my head, but I'll be happy to supplement that with a 28-J. But on one other thing you said, did the district court actually make a finding that Mr. Cannon gave Mr. Guzman permission to live in the trailer? It's unclear, right, because he says to the extent that there was permission, Cannon didn't have the ability to give the permission, which presumes that there was permission at some point. Because what he says is that any agreement was wrongful at the inception. So there couldn't be an agreement, which presupposes that there was an agreement, just that it was wrong. So yes, I guess that's the answer to the question. I have a follow-up question to Judge Matheson's question about the notice and this code that I hope you all will eventually get revised. So the notice that is required has the language that Judge Matheson quoted. No person shall be on the property without the written permission from the department and or actually or and. And then it just goes away. And you would agree that neither Mr. Cannon nor Mr. Guzman had written permission from the department to be on this property. I don't think that was our burden at that point. I mean, there's just no question that that's a fact. And if I try to put words in your mouth that nobody. It would appear that no one had permission to build up property from the department. But the notice, as Judge Matheson points out, has completely different language than apparently was mandated by the code. And that says something quite different. That you just have to have the permission of the owner or the department. No person shall occupy this structure or remain on the property past daylight hours. Now these were daylight hours.  And remaining on the property, which. So how do we reconcile the fact that there was, if you have any idea how we do this, that the language on the post, on the notice, on these two structures, was supposed to be exact language that's mandated in the housing code. But it's quite different, not just grammatically, but substantively. Which do we go by? Don't we go by the code? So I think what you do is go by the wording of the code, right? And the definition of substandard building itself says that no person. Excuse me, I forgot. Yeah, and while you're doing that, let me just add to the complexity of it. If we go by the code, I think you're SOL. Because the code says no person should be on the property without the written permission from the department. And it's got that or, and language. And Mr. Guzman certainly does not have written permission from the department to be on that property. One, I think that's limited to only if they haven't taken any steps to abate it. But secondly, it's one part of the code, right? When you look at the code as a whole, and the definition of substandard building is just to that building itself. And so you have to look at what the code is designed for. It's designed to protect the people in the house and not on the property itself. So if there's one notice on one structure, then that would cover the entire lot. That's the government's position. That is not ours. Because say you have a lot with a house and a casita, and only the house is posted as substandard. Under the government's theory, they can just walk into the casita, regardless of if it's occupied, because the first building is substandard. And also, the code itself says that if a building is, if the property is uninhabited, they have to find, make reasonable efforts to find the owner. And if they can't find the owner, they have to go and get an administrative warrant. They didn't have an administrative warrant here. And I had another point that just escaped me. I'm not understanding why it's the code that goes to the standard question, at least in terms of reasonable expectation of privacy. It isn't like Mr. Guzman is reading the code. He's reading the notice. And I mean, what if the city had posted a notice on the door of the trailer, and it said, no one should enter or reside in this trailer by order of the city of Albuquerque. P.S., you have no reasonable expectation of privacy if you do. Now, that isn't in the code anywhere. Correct. But in terms of assessing whether Guzman, if he started living in the trailer, has a reasonable expectation of privacy, it seems like he's going to have a tough go of it. Well, no, because, I mean, there's no, even in an uninhabitable house, you still have an expectation of privacy in it, right? And so even if the house was uninhabited, he would have an expectation of privacy in it. And he can, the question is whether or not he can be in it. It doesn't mean that he doesn't have a reasonable expectation of privacy in his little home. Okay, P.P.S. on the notice. The police can come in here any time they want and get you out of here. I mean, at some point, he's got to be put on notice that he shouldn't be in the trailer. He may be on notice he shouldn't be in the trailer, but it doesn't destroy his expectation of privacy in it. Well, I wouldn't feel very private under those circumstances, would you? Well, I would, not if the notice was on the trailer, but it's not on the trailer. And I would still think that I was... It's hypothetical, I get it, but... But I think that you have permission to store things on your property. You still have the ability to use your property. And the police have no right to just come on the property. I mean, the city official says he has the right to be on the property because he's a city official, but that's not true. He has to get consent or he has to get an administrative warrant. Even if we were to find that he had standing for Fourth Amendment purposes and that there was a violation when they just opened the door, wouldn't it fall pretty clearly under the good faith exception? Because I think Mr. Armetta had given them incorrect information that they relied on. Isn't that kind of the classic good faith exception? It is classic good faith exception, except you still have to be reasonable in the way you did it. And they didn't knock and they didn't announce, they just opened the door, and that's unreasonable. And that deserves exclusion because exclusion is designed to punish bad police behavior, which that is. And I'm going to reserve my 38 seconds. Thank you. Thank you. May it please the court. My name is Paul Mischlevitz and I represent the United States in this matter. The threshold question for this court is whether it will enforce its rules on waiver and the contract terms of the conditional plea that I and Mr. Guzman signed before he filed this appeal. Well, that just goes to the constitutional challenge, right? Yes, Your Honor. The new argument that was not fairly presented to Judge Johnson is the argument that even if Mr. Guzman were unlawfully on the property, he would still have Fourth Amendment protections and it would still potentially be a violation for the cop to have opened the door. That's the new argument. The preserved argument that we've been fighting on this whole time is the question of whether he was a trespasser, whether he was lawfully present, whether he had Mr. Cannon's permission, whether Mr. Cannon's permission trumps the regulatory scheme the way we just heard. That's preserved. That is what we have been fighting about the whole time in front of Judge Johnson on appeal and now to the extent the court wants to hear more about it. The position of the United States on that is that it cannot be true that Mr. Cannon, who I would describe as the purchaser but not the owner, you saw the testimony that he didn't have the deed yet. Mr. Stockman still had the deed, and indeed Mr. Stockman never gave the deed because Mr. Cannon was in default, though Mr. Stockman wasn't repossessing the property at the time of this incident. So Mr. Cannon was a lawful occupier in general, but for this notice, this yellow notice, that says very clearly no one can be in this building or on the property, and if you want access during the day to repair it, please call this phone number and get an access letter. And Mr. Guzman testified. He saw that notice. He saw it had something to do with property, but he didn't bother with it. Let me ask you a question. So that notice, under your interpretation, covers the entirety of the lot? Yes, sir. All the other buildings on the lot, the lot itself, correct? Yes, sir. Then why in the world did you all post the note on two structures on that lot? That makes no sense to me. I don't think the record directly answers that question, but may I nevertheless answer the question? Sure. It's my understanding that the city of Albuquerque posted the notices on the structures that were on the property when they put the notices up, and then later this pop-up trailer was brought onto the property, and what we witnessed on the body cam video is the next inspection of that property by Chris Armenta, the code enforcement guy, escorted by two police officers. So if they had not found anybody in that property, later in the visit would they have put a notice on that trailer? Maybe. Do you see how somebody that is occupying a third structure, a trailer on that property, might look at those two posts on two different buildings and think, sort of like I would perhaps, that, well, that's just for those two buildings, not for the entirety of the lot. Yes, and if Mr. Guzman had testified, he saw the notices, he saw the notices were on those two buildings, he read the word property the way counsel reads the word property to mean just a building or just a structure, not the landed estate, and he thought, therefore, that his trailer that he was borrowing to have a place to stay was outside the regulatory ambit of those notices, and on that basis he stayed there, and he was very surprised when a cop showed up without knocking. We'd have a different case. So is the standard for a reasonable expectation of privacy subjective or objective? Well, it's both. He has to have a subjective expectation of privacy that society objectively considers reasonable. Can I ask one more question and then I'll shut up? As many as you want, sir. What's that? All you have, sir. I'm ready. Okay. Please, sir, may I have it? We'll be here for an hour and a half. So in the housing code, the very first provision after short title and purpose is scope. A, application. The provisions of this code shall apply to all buildings or portions thereof used, designed, or intended to be used for human habitation. The word property, unless I'm just blind, does not appear anywhere in the provision governing the scope of this housing code. Your argument is involving, as I understand it, there are, as Judge Madison said, a lot of numbers in here. Fourteen, three, five, dash, three, D. We're looking at D. Two B. Two B. And so, and then there's two sentences. In the first sentence, no person shall occupy any building, occupy any building, da, da, da, da. And then the second sentence is no person shall be on the property. And so it's sort of like, you know, what is the antecedent for a pronoun? So is the property just used as a synonym for the word the building, or does it mean something beyond the building, the property surrounding the building? And you're saying, implicitly, your whole argument is, no, it means something different than, it's not just a pronoun or a reference to the building, it's the whole lot. Well, that would be quite odd, because that is beyond the entire scope of the provision according to the scope provision. As you have noticed, Your Honor, there are several code provisions at play here. I agree with you about the scope provision. The scope provision doesn't say structure or property. It doesn't say building or property the way that the notice does. I want to draw your attention to section 14-3-5-6, subsection A, subsection 3. One of the sentences says, no person shall occupy any building which has been posted as specified in this section in a manner contrary to the terms of the notice, period. Next sentence is, no person shall be on the property without the written permission from the department or and with the permission on them at all times while on the property. Chris Armenta testified that no one shall be on the property means to the building department, to the code enforcement department, no one can be anywhere on the property. That includes Mr. Cannon. That includes Mr. Stockman. But, you know, this is a legal determination, and I'm not sure Mr. Armenta is qualified to adjudicate. I think, unfortunately, we have to do that. Yes, sir. And so in sentence two, when it says no person shall be on the property, it seems to me that there are two potential interpretations. One is that, like a pronoun, is just a reference to the noun, the subject in the preceding sentence, the building. Or it could be on something beyond that, the surrounding lot. And so I guess the question that, unfortunately, we can't ask Mr. Armenta is, well, how does your interpretation, Mr. Armenta, of the broader definition, scope of the word the property, how does that conform to the scope provision that says nothing about the property and only talks about buildings? I agree with you about the scope provision, Your Honor. And the position of the United States is that when these code sections and when the notice itself uses the phrase structure or property, building or property, that means that the property is not merely a structure, not merely a building, but rather the land and estate. And furthermore, as to the reasonableness of anyone's hypothetical expectation of privacy in, let's say that Mr. Guzman, this didn't happen, but let's say Mr. Guzman noticed the scope provision that you have noticed and he testified, hey, listen, you know, I'm not a lawyer, but I did a little reading and the scope provision just talks about buildings. My buddy Ice or Cannon's buddy Ice dragged this trailer onto the backyard of the property. The trailer doesn't have a notice on it. And therefore, because of the scope provision, I was entirely surprised when the cops showed up and tried my door handle just like they tried the two nailed shut door handles of the buildings with the notices on them. We could, and more importantly, Judge Johnson could, and then ultimately you could, make the decision of whether that's a reasonable expectation of privacy or not. But that's not the case we have here. We don't have Mr. Guzman saying, I knew about the scope provision. I had the same eye that Judge Bacharach had, and therefore, I felt like my expectation of privacy was quite reasonable. He said, I saw the signs. I didn't care. That didn't have anything to do with me. I asked my buddy Jeffrey if I could stay on the place because I needed a place to stay. I didn't have a home. The trailer wasn't mine, but Jeff said I could stay there, so I was staying there. Could I just come back to the notice again? I guess my question is whether the notice could have sent mixed signals to Mr. Guzman because on the one hand, we have the no person shall reside in this structure or on this property. We have no person shall occupy this structure or remain on this property past daylight hours. But then towards the bottom, it says it is a misdemeanor to occupy this building or to remove or deface this notice. Why wouldn't that potentially convey to Mr. Guzman that this really is all about building and that if he's going to get in trouble, because that's the word misdemeanor is used there, that that's really what it's talking about. Because he testified he didn't care. If he testified, I read that notice and I saw that it was only a misdemeanor to occupy the building, and so I thought maybe they'd be a little mad, but I wouldn't be a trespasser if I was in this trailer that didn't have the notice on it. Therefore, I felt like I could stay in the trailer, and I was very surprised when the guy was standing there with a gun in my pants. If he had testified to that, I think we'd have a different case. You say he testified he didn't care? Yes, and I can look for it. We're going to find his testimony in 2, the second volume in the record on appeal. But he didn't care about what? About the notice or what it said. He knew that it mentioned something about a restriction on the property, but he didn't call the number to try to get an access letter. He didn't ask Jeffrey Cannon about it. It wasn't his problem. It wasn't his business. He just asked his buddy Jeff for a place to stay. Well, if that's the case, then I would come back to Ms. Johnson's argument that, well, if he didn't care about the notice, then why didn't Mr. Cannon's permission control his expectations? Ms. Johnson made an argument in the brief. Well, she made an argument this morning that the permission would trump anything about the notice. And that sounds a little stronger now if he didn't really care about the notice. Yes, sir. And my answer is, if I may. Please. She made an argument in the brief that the entire regulatory scheme is invalid. And she cited a case from Texas where the city of Lubbock was whipsawing a property owner. They were telling the property owner he had to repair the property but then not allowing him to access the property to repair it. And he won that case against the city of Lubbock. And she cited a case, I think it was from California, where a regulation said unions get free access to a property that had no nuisance. Well, I think I'm driving at something a little different than the cases and the code and everything else.  It's just, what was it that Mr. Guzman, what was in Mr. Guzman's head when he ended up moving in to the trailer? And we know he looked at the notices. Yes, sir. He had no reason to think he read the code. So he looked at the notices. That's what's inside his head. We've sort of been assuming he had at least a subjective expectation of privacy. But maybe that's not a good assumption. I don't know. But his universe of knowledge is the notices plus whatever Mr. Cannon said he could do. Isn't that really the core of what we're supposed to be focusing on? At least on the standing issue. So I asked him if he ever asked Jeffrey Cannon about these notices. He said it was Jeffrey Cannon's problem. It wasn't his problem. And I think I asked him, if we look at page 47 or 48, I think is where you're going to find this exchange of the second volume. I recall asking him, so did you ask Mr. Cannon about these notices? And he said no. So he actively, I would say, was willfully blind to the restrictions that existed. And I would say, Jeffrey Cannon's permission can't trump the regulatory power of the city to exclude people. Otherwise, the entire substandard property program would be invalid, which is not currently the law. I understand your argument. Before you sit down, I need to ask you this question. If Mr. Guzman has standing, do any of the exceptions to the warrant requirement justify the officer's entry? What's your position on this at this point? Because I'm not seeing much in your brief about that. We are not defending those on the record that was made below, which is why I wrote in the issues raised below, then we asked for remand. The new issues that were brought up for the first time on appeal, if they were brought up below, you might have more of a record on which I might be able to defend those exceptions. But I'm not doing that now. Can I ask a question? I have a question about the Albuquerque Uniform Housing Code at 14-3-5-9. That indicates when it's necessary to make an inspection or to enforce any of the provisions of the code, if a building or premises is occupied, you can seek permission to enter. If permission is denied, you have to get a warrant. Why isn't that relevant here? They didn't know it was occupied. The officer tested the door, and testing the door is what caused the door to open to see Mr. Guzman standing there with the gun in his pants. I think if they knew someone was on the property, they would have gone about it differently. And so what about they didn't knock to see if somebody was in there? I agree they didn't knock, Your Honor. And is that reasonable? It's a camper trailer. It's not posted with a substandard notice. And they don't know whether it's occupied or not, and they just enter, even though this provision seems to suggest that they're supposed to notify the person, show their identification, and seek permission. What I would say, Your Honor, is if the officer had knocked, and Mr. Guzman had opened the door himself so the officer could see them with the gun in his pants, First of all, there's a dispute about whether the officer saw the gun. And on the video, you can't see it. But we have to assume that Guzman's not an idiot. If they had knocked, I doubt he would have opened the door holding a gun or with a gun visible on him. I think that's a reasonable inference, Your Honor. So if he'd opened the door and he said, no, you can't come in, they would have to go get a warrant, right? If he had opened the door and they had seen him there, he would still be violating the state criminal trespass code, which in subsection C prohibits knowingly entering or remaining upon lands owned, operated, or controlled by the state or any of its political subdivisions, knowing that consent to enter or remain is denied or withdrawn by the custodian thereof, which he knew because he saw the yellow notices and just said he didn't care. But I thought you had preceded the whole statement with assuming that he has a reasonable expectation of privacy. Right. Assuming that he is standing. If we assumed he had standing, Your Honor, but he had voluntarily opened the door and the police had seen him there without the police being the one who opened the door, I would be defending that intrusion. But you're not even arguing. Oh, no, he didn't. He did not. The officer opened it. I agree. Can I ask one question, even though I know I said 15 minutes ago I'd shut up? Sorry. I just have a question about what you said to Judge Matheson about, you know, if, I know you want us to affirm, but if we remand on the Fourth Amendment standing issue, you want to be able to argue in district court these other arguments, substantive arguments. Is that fair? Ms. Johnson has, you know, argued that there was a reasonable expectation of privacy, that there was no other substantive basis for the officer to have found the gun to open the door, and so everything that follows is fruit of the poisonous tree. And you could have argued, you know, alternative basis to affirm, but you didn't. If we say that there's reasonable expectation of privacy, why is it fair to the defendant to say, okay, well, I'm going to give the government a second shot at the apple? If you enforce the waivers and the contract terms of the conditional plea agreement and you find that the defendant has standing only on the issues raised below, by necessarily finding not only was he not a trespasser under the Albuquerque Code provisions, but he also wasn't a trespasser under the state law, then I do not ask for a reopening of evidence at the district court.  Thank you. Thank you, counsel. We let him over quite a bit. Oh, you still got time. Why don't you give her another couple of minutes? Let's give a couple more minutes to kind of even things out here. Okay. Okay. First, I want to clarify one thing. I'm not saying the housing code as it is is wrong. I admit that they can regulate the safety of the buildings and they can exclude people from living in those buildings, but they can't exclude everyone from the entire property just by posting a notice. It doesn't work that way. You don't get to circumvent the Fourth Amendment by just putting up a notice saying, hey, I can get on this property any time I want. Secondly, I think it's perfectly reasonable. I'm trying to understand what it is that you're raising on appeal and how it relates to what you raised in the district court. So you are now saying that you think that code is unconstitutional to the extent that it would prevent Mr. Cannon from giving Mr. Guzman permission. Yes, to that extent, but I don't think that's what the code actually says. Okay, but you didn't argue that to the district court. Not in that much detail. I mean, we said that he could be on the property and that just posting didn't take away his right to give permission, so he wasn't a trespasser. Well, you're limited under the plea agreement to the grounds that you raised in your motion to suppress, right? I think that while that's the language of the plea agreement, I think that we can fairly attack any ground that the district court used because otherwise it puts us in a very strange position. The district court didn't rely on any finding related to whether it was unconstitutional to prevent Mr. Cannon from giving Guzman permission, did it? No. So this isn't a situation where the district court relied on it and you didn't argue it. Aren't you precluded now from raising that? No, because it's a logical extension of the argument. I come from state practice in New Mexico. They point out the difference between what you're doing in trial and the amount of time that an appellate attorney has to sit and think about, like, what does that holding actually mean or what does that statement actually mean? And when he says that Mr. Cannon can't give Mr. Guzman consent, he's saying that Mr. Cannon has no rights to exclude, and that would be a taking and that would be unconstitutional. So I think it's just an attack on the conclusion that is within the gamut. Well, in the district court, as I look at your argument, you argued that Mr. Guzman did not violate the code at all when he was on the property. And now it seems to me you're arguing if he did violate the code, the code is unconstitutional because the code could not have prohibited Mr. Cannon, the owner of the property, from giving Mr. Guzman permission. I don't see that argument in your district court pleadings. I don't see it in the decision from the district court, and I think it's precluded by your plea agreement, and even if not by your plea agreement, because it wasn't part of your motion to suppress under the rules. I understand, but I think it's contingent on what the district court's finding actually ends up meaning legally, and legally what it means is that posting that notice takes entire control of the property, and that can't be, and that was always the argument, was that he couldn't be a trespasser because Mr. Cannon could give permission to be on the property. But the second thing I want to say is the sign itself says that you can be on the property with permission of the owner or the department, so I think it was perfectly reasonable for Mr. Cannon and Mr. Guzman. Permission from the department? It says owner or department in the small print on the sign. On the sign or in the? On the sign. Okay. I'm going back to he said that Mr. Guzman ignored the sign, but I think even if he didn't ignore the sign, it's reasonable to expect that the owner of the property can give you permission and that the sign itself doesn't contradict that. For purposes of repairing the property, it doesn't say for purposes of living in a trailer on the property. It doesn't, but, you know, he could be securing the property by living on it. I mean, and it was during the daylight hours, so even if he couldn't be there at night, what the cops did by just assuming that he was a trespasser and not conducting any further inquiry was unreasonable. I mean, and I come back to you, the curtilage is not included in this substandard building designation. I think we understand your argument. I appreciate the explanation, and we will consider the case submitted. Counsel are excused.